## HANS P. LAU v. W. B. GRIMES DRY GOODS COMPANY ET AL.

FILED NOVEMBER 8, 1893.    No. 4870.

1. **Briefs:** MISCONDUCT OF ATTORNEYS: INSINUATIONS AND IMPUTATIONS OF UNFAIRNESS and improper motives to the trial judge are highly improper and prejudicial to the party making them.

2. **Instructions**: AUTHORITY OF ATTORNEY TO BIND HIS CLIENT. Where the question at issue was whether an alleged agreement had been made in a case pending, by an attorney of record for one of the parties, there being no controversy with respect to the extent of his authority, it is not error to refuse an instruction defining the power of an attorney to contract in the name of his principal.

3. ——. The trial court is not required to charge the jury in the exact language requested. It is sufficient if the substance of an instruction be given.

4. **Review**: HARMLESS ERROR. A judgment will not be reversed on account of errors not prejudicial to the complaining party.

5. **Evidence of value** examined, and *held* sufficient to sustain the judgment of the district court.

6. **Attachment**: LIABILITY OF GARNISHEE: UNSATISFACTORY DISCLOSURE. In an attachment suit it was stipulated that L., a garnishee, who had taken possession of a stock of goods to satisfy a mortgage executed by the defendant, should answer by affidavit "showing fully the amount of money remaining in his hands from sale of stock formerly belonging to the defendant," and that upon the payment of said money into court, less the amount of his mortgage and expenses, the garnishee should be discharged. *Held*, No defense in an action by the plaintiff against the garnishee after answer for an unsatisfactory disclosure, the cause of action alleged being the conversion of the stock of goods while in his possession.

ERROR from the district court of Fillmore county. Tried below before MORRIS, J.

*E. P. Holmes*, for plaintiff in error.

*Edgar C. Ellis, M. H. Weiss*, and *Chas. P. Schwer, contra.*

POST, J.

This was an action in the district court of Fillmore county by the defendant in error, The W. B. Grimes Dry Goods Company, against the plaintiff in error under the provisions of section 225 of the Code, for an unsatisfactory disclosure as garnishee.

The other defendants in error, thirteen in number, were intervenors who each claimed an interest in the property adverse to the defendant below. It appears from the record of the case that for some time prior to October 15, 1888, Wm. Schultz & Son had been doing business as general merchants in the village of Strang in said county. That on the day named said parties executed in favor of Lau, the plaintiff in error, a mortgage on their entire stock of merchandise to secure a note of that date of $1,086.89, and suffered the mortgagee to take immediate possession of the property so conveyed. Shortly thereafter The Grimes Dry Goods Company commenced an action against Schultz & Son in the district court of said county, and caused an order of attachment to issue therein, by virtue of which the property in controversy was seized while in possession of the plaintiff in error. The latter subsequently recovered possession of the property by means of an action of replevin against the sheriff, and proceeded to sell it in order to satisfy his mortgage. Some time after he had recovered possession of the property by his action against the sheriff, The Grimes Dry Goods Company and other creditors of Schultz & Son instituted garnishment proceedings against him as a supposed debtor of the latter. The several attachment suits were consolidated to the extent that by agreement a single answer was filed by the garnishee, in which he says: "There is now in his hands belonging to said defendants (Schultz & Son), subject to the liens by mortgages and orders of garnishment, the sum of $2,812.68; and that with this answer affiant hands into this court the said sum of $2,812.68, subject to the orders of said court hereafter to be made. Affiant further says that said amount is all of the property, moneys, or credits of any nature whatsoever now in his hands belonging to the said defendants, and that since the orders of garnishment were served upon this affiant he has not in any manner paid to the said Schultz & Son any part of the money in his hands, and that the amount

of money in his hands, and that the amount of money now handed to the court is all of the money belonging to the defendants."

In the petition below, after stating its cause of action against Schultz & Son, which had in the meantime been reduced to judgment, The Grimes Dry Goods Company alleges the filing of the answer set out above, and charges that said answer is not true, and is not a full disclosure of the indebtedness of the garnishee to Schultz & Son. It is further charged that at the time he was served with notice said garnishee had in his possession belonging to Schultz & Son money to the amount of $4,000 and the stock of merchandise above mentioned of the value of $9,000, all of which he has converted to his own use.

In his answer the plaintiff in error admits that he had in his possession when served as garnishee the stock of goods belonging to Schultz & Son, and that he at said time held the property in controversy by virtue of the aforesaid mortgage in his favor, but denies that said property was of the value of $9,000, and avers that the value thereof was $4,533.91, and no more. He admits that said property had been disposed of by him at private sale, and avers that it was so disposed of under and by virtue of an agreement with the plaintiff below and the several garnishees. He alleges that the stock of goods in controversy was sold to the best possible advantage, and in such manner as would insure the largest and best price, but that they were old and shop-worn, and worth only the sum above named; and that after paying the amount due by virtue of the mortgage in his favor and his actual and necessary expenses in the premises, he had paid into court the balance remaining, to-wit, $2,812.68. He also alleges that previous to the filing of his answer as garnishee he entered into a written stipulation with the plaintiff by which it was agreed that he should be discharged upon paying into court the money then remaining in his hands after satisfying his

mortgage and costs of sale. The stipulation referred to above is as follows:

"In District Court of Fillmore county.

"BARBE BROS. 〕
    v.
  SHULTZ & SON. 〕

"PAXTON & GALLAGHER 〕
        v.
  SHULTZ & SON. 〕

"W. B. GRIMES DRY GOODS CO. 〕
            v.
  SHULTZ & SON. 〕

"ROBERT KRAUS 〕
      v.
  SHULTZ & SON. 〕

"It is hereby stipulated and agreed by and between the parties to the above entitled causes, and each of them, that answer of garnishee, Hans P. Lau, in open court is waived and consent given him to answer by June 4, 1889, by affidavit, showing fully the amount of money remaining in his hands from sale of stock of goods formerly belonging to Shultz & Son.

"2. That the amount of said sums of money, less the amount of Lau's note and mortgage thereon and expenses of foreclosure, be by him paid into court to await the further order.

"3. That upon the payment of said money into court, the garnishee be dismissed.        H. F. ROSE,

"*For H. P. Lau, garnishee.*

"W. C. SLOAN,

"*Att'y for all the above plaintiffs.*"

The issues presented by the petition of the intervenors and answers thereto are substantially the same as above. At the trial it was stipulated as follows:

"It is stipulated by the parties that the issues, so far as this trial is concerned, to be submitted to the jury here, are the following questions:

"1. Was the sale of the merchandise made prior to the advertised day of such sale of goods and merchandise held by the defendant Lau under his mortgage, made under an agreement with the plaintiff?

"2. Was the sale of the merchandise, made prior to the advertised day of such sale of the goods and merchandise held by defendant Lau under his mortgage, made under any agreement with the intervenors herein?

"3. What was the fair and reasonable value of the stock of merchandise of Shultz & Son at the time the same was taken possession of by the defendant Lau, to-wit, October 19, 1888?

"The finding of these facts is to be taken in no way as intended to admit the claims of any of these defendants, but for the purpose of this trial, of the facts submitted to the jury, these claims will be taken to be admitted as represented in their pleadings. This agreement is not intended in any way to hamper or interfere with the parties in this action which they may find arise under the pleadings which shall be submitted to the court in this case, if any such there be.

"As to any other questions of fact other than these submitted to the jury here, a jury is waived and they will be submitted to the court."

The first and second of the above interrogatories were answered by the jury in the negative, and in response to the third, the stock of merchandise was found to have been worth $6,650 at the time the defendant below took possession thereof.

The first errors assigned relate to the overruling of the motion to set aside the above findings. The general charge of the court is violently assailed by the plaintiff in error as "meaningless," "unintelligible," and evidence of prejudice in the mind of the trial judge, etc. This practice has been frequently commented upon and always condemned. Criticisms and insinuations of the character un-

der consideration are always out of place in the argument of a lawyer, and, as said in a recent case in this court, are in the nature of an admission that the party making them, for reasons best known to himself, is not willing to rely upon the merits of his case. (See *Flannagan v. Elton*, 34 Neb., 355.) But as much as such a practice is to be deplored as a rule, it is doubly censurable in a case like this, where, after carefully considering the lengthy charge copied in plaintiff in error's brief, we discover, on examining the record, that no exception was taken thereto, either at the time or in the motion for a new trial. We certainly have a right to expect fairness and candor on the part of attorneys who practice in this court, and to assume when considering the questions argued in their briefs that the discussion therein is pertinent to some question presented by the record. In this case we have failed to discover in the charge of the court any prejudicial error; but suppose it to be justly subject to criticism, it was evidently satisfactory to the plaintiff in error when given, and he will not now be heard to complain.

The court refused to give the following instruction asked by the plaintiff in error, to which exception was taken:

"You are further instructed that if you find from the evidence that the plaintiff in this case, together with the intervenors, entered into an agreement with the defendant, by and through their duly employed attorneys, then, and in that case, you are instructed that the attorneys for said parties had the authority, by virtue of their employment as such, to do in behalf of their clients all acts in or out of court necessary or identical to the prosecution and management of the matter of the business entrusted to said attorneys by such clients, and they will be bound thereby; and you are further instructed that it is a general rule of law, that in the absence of fraud a client is bound by the acts of his attorney in all matters pertaining to the business entrusted to his care or management."

There is no error in the ruling complained of. No issue was involved with respect to the power of an attorney to bind his client by agreements within the scope of his authority. The request, it may be assumed, embodies a sound proposition of law and might have been given without prejudice to the rights of the adverse party, although it is a rule well settled in this jurisdiction that instructions should have special reference to the evidence, and that it is error to leave the jury at liberty to infer a fact of which there is no proof. (*Cropsey v. Averill*, 8 Neb., 152; *City of York v. Spellman*, 19 Neb., 357.) Had there been a controversy with respect to the authority of the attorney to stipulate for the disposal of the stock of goods at private sale, the refusal of the instruction would have presented a different question. But since the question at issue was the execution of the agreement rather than the authority to make it, we are unable to perceive wherein the plaintiff in error is prejudiced.

It is next argued that the court erred in refusing the following instruction:

"You are further instructed that in arriving at the value of said stock here in controversy you will not go out of the evidence to ascertain the same, or speculate as to what the value of the same might have been, but your answer to such question, fixing the value thereof, must be based upon the evidence now before you; and in arriving at such value from the evidence in this case, you are instructed that it is your duty to find what the fair and reasonable value of such stock was at the time of its passing into the hands of said defendant, to-wit, on the 19th day of October, 1888, in the market in which said stock was located, to-wit, Strang, Nebraska, and you will not allow yourself to be misled or confused with any testimony that may have been introduced in this case concerning a market value, or invoice price, that might have been at some time attached to or made of said stock."

This paragraph, so far as it states the general rule, had been given in substance in the general charge of the court. The last clause is apparently intended to disparage the testimony of the witnesses for the defendant in error, Stewart and Houchin, who participated in the appraisement of the goods at the time they were taken from the sheriff in the replevin suit. Each of these witnesses on direct examination testified that the value of the goods was a little less than $8,000, about $7,800. On their cross-examination it was disclosed that four persons participated in the inventory and appraisement, each of whom listed different parts of the stock with the value of the items thereof, upon which all agreed; that the separate lists were copied the next day, making the complete inventory, and the values footed up showing a total of $7,800. The inventory was not offered in evidence by the plaintiff below, nor is it claimed to be independent evidence of the value of the stock of goods. It would probably have been inadmissible if offered for that purpose, but was a proper subject of inquiry on cross-examination as tending to show the witnesses' means of knowledge. The fact that the value given by the witnesses corresponds substantially with the appraisement is at most a corroborating circumstance not liable to "confuse" or "mislead" the jury or obscure the real question at issue. The ruling of the court in refusing the instruction, therefore, if erroneous, is error without prejudice.

The next assignment in the motion is that the third finding is contrary to the evidence. The evidence is conflicting. The witnesses for defendant in error, who are shown to be experienced merchants and salesmen, testify that the stock of goods was worth $7,800, while some of the witnesses for the plaintiff in error place their value as low as $4,500. The value as found, $6,600, is not so clearly against the weight of the evidence as to call for reversal in this proceeding. The jury were as capable of weighing

the evidence and determining therefrom the value of the property as we are, and their finding should not be disturbed.

The district court having refused to set aside the special findings, proceeded in accordance with the stipulation to receive evidence offered by the intervenors tending to prove their respective claims as against Shultz & Son, and to establish their rights to share in the proceeds of the property in controversy. That hearing resulted in a finding and judgment for the plaintiff below in the sum of $3,404.35, being the value of the stock of goods less the amount of the mortgage, $1,086.89, and the amount of money paid into court by the plaintiff in error, $2,812.68, with interest.

Subsequently a formal motion for a new trial was made by the plaintiff in error which presents certain questions in addition to those already considered. It is contended that the stipulation first set out amounts to a waiver by the defendant in error of his right to proceed against the garnishee under the Code, and is a complete defense to this action. It will be observed that the stipulation relied upon was made with reference to, and filed in, the attachment suit before this action was commenced, and before this cause of action had accrued. The garnishee was thereby authorized to answer by affidavit "showing fully" the amount of money remaining in his hands, etc., and not otherwise. There is nothing therein to warrant the inference that the parties contemplated a disposition of the goods otherwise than at public auction, after due and legal notice. And when it is read in the light of the facts found by the jury it is certain that in disposing of the greater part of them at private sale he acted without authority. It is clear, too, that such act amounted to a conversion of the property so disposed of. He was required to make true disclosure under oath (sec. 221 of the Code), and this obligation was neither restricted nor enlarged by the stipulation. The proceeding against the plaintiff in error as garnishee was in

the nature of an action by Shultz & Son for the use of the plaintiff therein, The Grimes Dry Goods Company. That he *is* liable *to* them *or* others who have succeeded to their rights for the value of the goods will not be seriously questioned. Nor is there any sound reason for holding that the defendant in error is now estopped by the terms of the agreement in question to controvert his answer and disclosure as garnishee.

There is a further contention, viz., that the judgment is excessive. It is true the judgment of the defendant in error against Shultz & Son is but $1,040, and costs taxed at $42.63. But it is true that it had previously been agreed between the several intervenors that they should share *pro rata* in the proceeds of the stock of goods. It is also true that they were all before the court, and are concluded by the judgment with which they are satisfied. Had objection been interposed by them the district court would have determined the rights, as between themselves, of the several parties claiming adversely to the plaintiff in error. According to the record the plaintiff below has a judgment for the exact amount due from the defendant therein to the creditors of Shultz and Son on account of the conversion of the property in controversy. That the proceeds of the judgment remain to be distributed among the beneficiaries thereof in accordance with an agreement between themselves is a fact of which the judgment defendant should not complain. There is no material error in the record and the judgment is

AFFIRMED.