## Burke v. Johnson.
(Decided June 24, 1938.)

J. L. HAYS, HAWK & LEWIS and JOHN D. W. COLLINS for appellant.

HARRY L. MOORE and STEPHENS COMBS, JR., for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The question to be decided is whether the trial court committed error in giving a peremptory instruction for the defendant in the suit of the appellant, D. F. Burke, against the appellee, Arthur Johnson, for damages for alienating his wife's affections. It is the nature of the ground upon which a reversal of the judgment is asked and not the nature of the case that requires a statement of the evidence in detail.

The plaintiff and Fannie Wainscott were married in 1926 and lived together until about July 1, 1936, when they separated following the husband's discovery of his wife in the arms of his employer, the defendant, Johnson. Burke had worked for Johnson as an undertaker and embalmer in Lynch, Harlan County, in 1927 and 1928. In 1933 Johnson opened an undertaking establishment in Whitesburg and placed Burke in charge of it while he ran the business in Lynch. He came to Whitesburg two or three times a week, and especially when Burke would be away or the business pressing. The plaintiff and his wife lived in an apartment over the undertaking establishment. The defendant frequently sent Mrs. Burke flowers, once when she was in Florida with her husband; gave her articles of clothing; furnished her with an automobile when she desired it; took her to dances, where he was almost exclusively her partner; and otherwise paid her marked attention.

Sometimes when Burke would call his home on the telephone Johnson would answer. On other occasions when he returned home he found Johnson there. When his wife was ill she refused to take medicine from him or her sister, but readily did so when Johnson insisted. Only he could persuade her to submit to a surgical operation.

A young woman who lived with the Burkes for two years while attending school testified that Johnson sent Mrs. Burke flowers and bought her hose; that he was a frequent visitor to the apartment during Burke's absence and she was with him often at the funeral home down stairs. The defendant stayed all night in the apartment several times during Burke's absence. When she retired the witness would leave him and Mrs. Burke together. The court sustained objections to her testimony as to certain statements of the wife after her separation from her husband concerning her love for Johnson and their meretricious relations. But he admitted evidence as to the wife's statement before the separation that she had not been in love with her husband for a long time and was much in love with Johnson, for the purpose, as he admonished the jury, of showing affection or lack of affection for her husband or the defendant. We think the ruling was proper. Leucht v. Leucht, 129 Ky. 700, 112 S. W. 845, 130 Am. St. Rep. 486; Willey v. Howell, 159 Ky. 805, 169 S. W. 519; Melcher v. Melcher, 102 Neb. 790, 169 N. W. 720, 4 A. L. R. 492, and annotations.

A former maid at the Burke home testified that when the plaintiff was called out of town Johnson stayed most of the time upstairs in the living quarters and often stayed there at night when they would have parties alone. Sometimes he would leave after midnight and sometimes stay the night through. When her husband would be away Mrs. Burke ordinarily slept with the witness, but when Johnson was there over night she could not say where Mrs. Burke slept. One night after the three had had a party the witness went to bed leaving Johnson and Mrs. Burke in the kitchen. She came to her room and gave her a drink that was not water, stayed a little while and then got up and went out of the room in her pajamas and never returned. Johnson was in the adjoining bedroom.

The cross examination of these young women tend-

ed to show there was some exaggeration as to the frequency of the conduct they related, but on the whole their stories were unshaken.

The climax came, according to the testimony of the plaintiff, under these circumstances: One evening after supper, he went down stairs leaving his wife and Johnson washing the dishes together. He returned and went into the bathroom, left the door open and did not turn on the light. He heard his wife and Johnson discussing his possible whereabouts. They then went through the house turning on the lights in every room and then turning them off after inspection, but did not come into the bathroom. They met in the kitchen and Johnson reported that the husband was not there. They embraced and then the plaintiff stepped out of his concealment and began packing up his clothing. Johnson begged him to reconsider what he was doing, and asked him if he had stopped to think how his action would affect him (Johnson). The plaintiff responded with the question whether Johnson had stopped to think what he had done to him (Burke), to which Johnson replied, "Why, you haven't seen ten percent".

Next morning Burke took his wife to her mother and left her, and soon thereafter filed this suit for damages.

The appellee takes the position that the plaintiff did not sustain the burden of proving either the loss of his wife's affection or that the defendant had done or said anything intending to alienate her affections, or had in fact done so.

The ruling of the court must be tested not only by the letter of the testimony but the fair inferences therefrom as well.

The evidence manifestly shows the defendant to have violated plaintiff's home and to have been guilty of criminal conversation, but the case is not of that particular class. It is an action solely for the alienation of affection. The proof of sexual misconduct is permitted in such a suit not to establish the cause of action but in aggravation of damages. All authorities agree that though there be proof of the loss of affections of a plaintiff's husband or wife, as the case may be, it is essential for the plaintiff to show that the defendant brought about the alienation. Merritt v. Cravens, 168

Ky. 155, 181 S. W. 970, L. R. A. 1917F, 935; Jackson v. Cook, 222 Ky. 409, 300 S. W. 853.

The blandishments and persistent courtship of the wife by the defendant abundantly proved a purpose and intent on his part to have and to hold her affections and a most active and vicious interference by him. In this respect the case is more aggravated than was the plaintiff's evidence in Rouse v. Rouse, 243 Ky. 447, 48 S. W. (2d) 1049, where a judgment for damages was affirmed.

The case is close on the sufficiency of evidence of the alienation of the wife's affections. Generally, as in the Rouse Case, there is evidence of a consequent estrangement between the husband and wife precipitated by the alienated one, and often a suit for divorce, which thus manifests the effectiveness of the defendant's pursuit. Here there was no open estrangement until the husband took the wife home to her mother. The evidence of the successful conquest by the defendant consists of the actions of the wife and her single statement. It is generally held that the mere maintenance of improper relations by a husband or wife with another is not of itself sufficient evidence of the alienation of his or her affections. Such was the ruling in Scott v. O'Brien, 129 Ky. 1, 110 S. W. 260, 33 Ky. Law Rep. 450, 16 L. R. A., N. S., 742, 130 Am. St. Rep. 419, but it was in connection with the absence of any evidence that it was the defendant's acts and machinations that had induced an alienated husband to interest himself in her and the presence of proof that he had voluntarily neglected his wife and pursued the defendant. However, it is observed that the evidence as a whole was held sufficient to take the case to the jury. But there is more than a mere carnal relation shown in this record. It is not necessary that the wife should have been enticed away, for the action will lie although the wife has not left the husband's house. Tiffany on Domestic Relations, page 114. The gist of the action is not the loss of services or assistance but is in the loss of consortium or conjugal rights, which include the companionship, fellowship, affection and society of the wife or husband, as the case may be. Deitzman v. Mullen, 108 Ky. 610, 613, 57 S. W. 247, 248, 22 Ky. Law Rep. 298, 50 L. R. A. 808, 94 Am. St. Rep. 390; McGregor v. McGregor, 115 S. W. 803; Hostetter v. Green, 150 Ky. 551, 150 S. W. 652; Lane v. Dunning, 186 Ky. 797, 218 S. W. 269. Furthermore, it

is no defense that the affections have not been entirely alienated. Keezer on Marriage & Divorce, Sec. 156; 30 C. J. 1128. And like any other fact, the alienation of affection may be proved by circumstances. Upon this point, whether the proof is sufficient to show that the wife's affections had in fact been alienated from her husband, it seems to us that in addition to her statement, the jury, by the application of common sense, could have found that her unfaithfulness to her husband, her acceptance of the defendant's attentions, and his influence over her showed a transfer of her love and affections to the defendant. We think, therefore, that it was error not to submit the case to the jury.

The judgment is reversed.